Mr. Justice James
delivered the opinion of the Court:
The facts of this caée are set forth in the following stipulation:
“The plaintiff and Sallie W. McKelden intermarried in the District of Columbia on March 13, 1875. On April 10, 1876, issue of such marriage, a son, was born, and is still living. On July 23, 1879, John C. McKelden and wife, parents of the said Sallie W., duly conveyed to her in fee simple certain improved real estate situate in said District. On May 13, 1885, Charles.King and another duly conveyed to said Sallie W., wife of the plaintiff, in fee simple, certain other improved real estate situate in said District. On April 19, 1886, said Sallie W., wife of the plaintiff, being then seized of the said real estate aforesaid, died intestate, leaving surviving her the plaintiff, her husband, and their above-mentioned son, her only child and heir-at-law. Since the death of the plaintiff’s said wife, the defendant guardian of her said infant son, by appointment of the Supreme Court of the District of Columbia, holding a special term for Orphans’ Court business, has collected and received the rents, issues and profits of the real estate above mentioned, claiming the right so to do to the exclusion of the plaintiff, surviving husband of said Sallie W. Smith, formerly McKelden, and the defendant now has in his possession, as such rents, issues and profits, the. sum of four hundred and thirty-two dollars and twenty-six cents.
“ And it is further stipulated and agreed that if the court shall be of the opinion that the plaintiff is tenant by the curtesy of the real estate above mentioned, judgment may be rendered by the court for the plaintiff for the said sum of four hundred and thirty-two dpllars and twenty-six cents, otherwise judgment shall be for the defendant. And it is agreed that, with the consent of the court, the said cause may be ordered to be heard at a general term of the court in the first instance.”
The cause was heard upon the stipulation at a former *291 term of this court, and it was held, in an opinion delivered by myself, that the plaintiff was not entitled to an estate by the curtesy. At a later day that judgment was set aside and a rehearing was ordered on the suggestion of the court. The question presented by the stipulation has been submitted on elaborate and learned briefs, and has been fully considered. We have now to announce our conclusions.
' Of course the plaintiff would by the common law have an estate by the curtesy in the case stated to us. The question to be considered is, whether the act of 1869, known as the Married Woman’s Act, has the effect to abolish that estate. Its provisions have been embodied in the following sections of the Revised Statutes:
“ Sec. 727. In the District the right of a married woman to any property, real or personal, belonging to her at the time of her marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts.
“ Sec. 728. Any married woman may convey, devise and bequeath her property, or any interest therein, in the same manner, and with the like effect, as if she were unmarried.
“Sec. 729. Any married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried.,
“Sec. 730. Neither thejiusband nor his property shall be bound by any such contract made by a married woman, nor be liable for any recovery against her in any such suit, but judgment must be enforced by execution against her sole and separate estate in the same manner as if she were unmarried.”
It is to be observed that, while this statute protects the husband from certain liabilities, his rights are not mentioned. These are not the subject-matter pf the law. They are acted upon only by the resulting operation of the pro *292 visions relating to the wife’s rights, and the process by which they are so affected is diminution by inconsistency with what is given to her. In this process no right belonging to the husband previous to the statute is negatived and taken away, if it can continue'to exist along with a complete enjoyment by the wife of the rights and capacities given to her. We apply this mode of construction, not on any principle that the rights of husbands especially are to be favored in construing a law, but because we hold that the effect of legislation framed after this fashion is not to be determined in any other way. It is not to be supposed by the courts that the legislature intended either to diminish or extend rights which are not the direct subjects of its statute, any further than they must be diminished or extended by the perfect operation of its expressed provisions. We do not refer here to the often quoted and often untenable maxim that statutes in derogation of the common law are to be strictly construed. The principle to which we refer is far more essential to certainty of rights, and it is only by adhering to it that judges avoid the substitution of personal doctrines where the legislature has been silent. When a statute does not even mention certain rights, they are not authorized to suppose that it intended to disturb those rights any farther than they must yield to the operation of the provisions.,which it made in dealing with another subject.
• In this instance some of these resulting effects are plain enough'. This statute necessarily extinguishes the husband’s interest in the wife’s property during coverture, although it does not mention that subject. But its effect upon his right of curtesy in case of her death intestate is not so readily determined. As to this question we proceed to consider first the special intent, and next the necessary operation of the act.
It is clear that the particular purpose of this statute was to secure to married women complete independence of capacity in regard to their property; and it is equally clear *293 that when the wife dies, whether testate or intestate, she must be said to have enjoyed every benefit which the statute intended to secure to her. In leaving her property to be disposed of by the law when she had power to dispose of it herself by devise, she will have enjoyed all the freedom of action that can belong to proprietorship. If this statute actually intended to prevent the husband’s succession in such a case, it must be said to have diminished his status when it was obvious that no benefit could thereby accrue to the wife, and merely for the sake of diminishing it. While proposing to make the relation of man and wife n.ore humane, it would introduce estrangement. There was reason enough for effacing the brutal subjection of the wife, but none for removing every vestige of community of life. We are of opinion, therefore, that it was not what might be called the conscious purpose of this act to cut off the husband’s succession by the curtesy in case of the wife’s death without exercising her power to direct .the succession.
It has been insisted, however, that even if this result was not aimed at, the common law estate by the curtesy has nevertheless been made impossible by the provisions of this act. This proposition rests upon the conception that by the common law the surviving husband’s right to that estate depended upon his having had during coverture an interest in the wife’s estate; that it was derivative from, or was a mere continuation of, that antecedent right, and that to allow its existence when all antecedent right has been abolished, amounts, not to asserting the continued existence of a common law right, but to the establishment of a new kind of curtesy estate. It is necessary, therefore, to consider the actual foundation of curtesy, and especially whether it was a mere continuance of some right beginning during coverture, or was an additional right, given by the law upon the wife’s death.
Littleton stated the conditions of its existence as follows: “Tenant by the curtesy of England is, where a man taketh a wife seised in fee simple, or in fee tail general, or seised *294 as heir in special tail, and hath issue by the same wife, male or female, born alive, albeit the same after dieth or liveth, yet, if the wife dies, the husband shall hold the land during his life by the law of England.” Lit., sec. 35, Coke 30 a.
The commentary on this passage' gives the following as its equivalent: “ Four things belong to an estate by the curtesy, viz., marriage, seisin in the wife, issue, and death of the wife.” In another note the commentator explains that "here Littleton intendeth seisin in deed.”
These authorities assert that it was when all of these “ four things ” had happened, and not before, that the law gave to the husband an estate by the curtesy; and they seem further to import that it was the seisin of the wife, and not any antecedent right of the husband, that determined what he has to hold by the curtesy.
On this point, however, there have been some embarrassing expressions by very high authority.
In Roberts vs. Dixwell, 3 Atk., 607, Lord Hardwicke observed: “ My Lord Coke says that to make a tenancy by the curtesy, there ought to be a right inchoate in the life of the wife.” The Lord Chancellor did not designate the passage to which he referred, but the context of the report shows that it must have been the same which had been cited by counsel, namely, Coke 30 a.
What Coke said in that passage was as follows:
“ And albeit the estate be not consummate until the death of the wife, yet the estate hath such a beginning after issue born in the life of the wife as is respected in law for divers purposes. First, after issue had, he shall do homage alone, and is become tenant to the lord, and the avoiwry shall be made only upon the husband in the life of the wife. . . . Secondly, if after issue the husband maketh' a feoffment in fee, and the wife dieth, the feoffee shall hold it during the life of the husband; and the heir of the wife shall not, during his life, recover it in sur cui in vita ; for it could not be a forfeiture, for that the estate was an estate of tenancy by the curtesy initiate, and not consummate.”
*295 The dry brevity' of this statement needs explanation. “The formal delivery of the seisin or feudal possession, which always took place in a feoffment, rendered it, till recently, an assurance of great power; so that, if a person should have made a feoffment to another of an estate in fee simple, or of any other estate, not warranted by his own interest in the lands, such a feoffment would have operated by wrong, as it is said, and would have conferred on the feoffee the whole estate limited by the feoffment along with the seisin actually delivered. Thus if a tenant for his own life should have made a feoffment of the lands in fee simple, the feoffee would not merely have acquired an estate for the life of the feoffor, but would have become seized of an estate of fee simple by wrong.” Williams on Real Prop., 135. When the husband made feoffment in the manner described by Coke, it was immaterial whether he was seized in his own right after issue had, or was still seized in right of his wife; in either case he had seisin and was able to deliver seisin. The result was, that the whole estate in the land was gone out of both, and was, so far as he was concerned, wholly in the feoffee. Of course, there was no way in which he could recover it in order to take his curtesy.
The effect actually achieved by the peculiar operation of a feoffment seems to have led some of our courts to understand Coke to mean that the husband acquired, on the birth of issue, an actual though partial estate, which he called curtesy initiate; an estate which he had a right to convey; and this conception of an already accrued interest, by way of curtesy, has been carried so far by some courts in this country, that they hold that interest to be .subject to sale on execution, so that the purchaser may hold during the life of the surviving -husband. The passage of Coke, from which this conclusion was drawn, seems to import ho more than that the husband actually had seisin of the wife’s land, and that therefore his feoffment had the usual effect of that mode of alienation.
In this inquiry, however, it is unnecessary to consider *296 what the extent of the right which Coke called curtesy initiate actually was. The important point is that whatever it was it cannot be gathered from the text referred to that that right was a condition precedent to an estate by the curtesy. Coke only stated, as a fact of the common law, that on the birth of issue certain rights and capacities did accrue to the husband; he did not state that they must have existed in order that the consummate estate by the curtesy should be acquired. ' On the contrary, he seems to have intended that these rights and capacities were allowed by way of anticipation of the consummate estate, and only because the right to have that estate, in case the husband should survive, was then certain. Instead of suggesting that the antecedent rights of curtesy initiate were the foundation of the consummate estate, this passage suggests that they were themselves dependent upon the latter. Speaking with due respect, the contrary conclusion seems to us to have been "based upon an assumption that post hoc propter hoc. We do not find authority for saying that the husband must have" had some right during the life of the wife, in order to have an estate by the curtesy after her death. We are of opinion that the fact that he has no interest in her lands during coverture, is not sufficient by itself to make curtesy impossible in case she dies intestate.
We have next to consider the effect of the wife’s power to devise her land. At the common law, when issue was had, the right of the husband to have curtesy, in case he should survive her, was absolute. The consummate estate, or more properly speaking, the estate, began at her death, but the right to have it, in case of survival, was indefeasible. The question is, whether an estate which can be enjoyed only when the wife dies intestate is something different from curtesy, and amounts to a new kind of estate, which a court cannot'create or recognize. We think that, under a proper construction of our statute, the right of the husband was not taken away, but was only subject to be defeated by an exercise of the wife’s power of devise. If not thus de *297 feated it would proceed to take effect. As we have already-said, the rights of the husband are acted upon by this statute only by the resulting operation of its provisions relating to the rights of the wife, and the process by which they are so affected is diminution by inconsistency with what is given to her. According to this construction, the husband continues to have his common law right as to curtesy, with this diminution, namely, that it is subject to be defeated by the wife’s devise. If his right is not thus defeated — in other words, if the wife dies intestate — it simply remains undisturbed by her, and he takes his estate.
At the first hearing of this cause, we attributed to certain authorities a weight which we do not now concede. On re-examination of this question, we are constrained to reverse the conclusion which we then reached. It is proper to acknowledge here the aid we have received from the learned discussions of counsel.
This cause was certified to this court to be heard in the first instance, and we make the decree that the plaintiff shall recover for the four hundred and thirty-two dollars and twenty-six cents. I understand that interest was purposely left out.